**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GLEN ELLYN PHARMACY, INC., | ) |
| on behalf of plaintiff and | ) |
| the class members defined herein, | ) |
| | ) |
|     Plaintiff, | ) |
|              v. | ) |
| | ) |
| KLOUDSCRIPT, INC., | ) |
| and JOHN DOES 1-10, | ) |
| | ) |
|     Defendants. | ) |

**COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE COUNTS**

**INTRODUCTION**

1.     Plaintiff Glen Ellyn Pharmacy, Inc.,  brings this action to secure redress for the actions of defendant KloudScript, Inc. and John Does 1-10 in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"),  the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the common law.

2.     The TCPA expressly prohibits unsolicited fax advertising.  Unsolicited fax advertising damages the recipients.  The recipient is deprived of its paper and ink or toner and the use of its fax machine.  The recipient also wastes valuable time it would have spent on something else.  Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

## PARTIES

3.    Plaintiff Glen Ellyn Pharmacy, Inc., is an Illinois corporation with offices in Glen Ellyn, Illinois, where it maintains telephone facsimile equipment.

4.    KloudScript, Inc. is a Delaware corporation. Its registered agent is Rinku A. Patel who maintains offices at 17W755 Butterfield Rd., Ste. 102, Oakbrook Terrace, IL 60181.

5.    It is engaged in the business of selling software consulting services; outsourcing of back-office functions; specialty pharmacy programs such as treatment of psoriasis, rheumatoid arthritis, hepatitis C and multiple sclerosis; and other services to pharmacies

6.    John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below.  Plaintiff does not know who they are.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction under 28 U.S.C. §§1331 and 1367.    *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446  (7th Cir. 2005).

8.    Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendant:

a.    Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

b.    Have transacted business in Illinois.

9.    Venue in this District is proper for the same reason.

## FACTS

10.    In 2018, Glen Ellyn Pharmacy, Inc., received the unsolicited fax advertisements attached as Exhibits A-B on its facsimile machine, providing the name and address of Defendant

2

KloudScript, Inc., and inviting Plaintiff to participate in a June 2, 2018 seminar describing services sold by Defendant to independent pharmacies such as plaintiff.

11.     In 2018, Glen Ellyn Pharmacy, Inc., received the unsolicited fax advertisements attached as Exhibits C-E on its facsimile machine, providing the name and of defendant KloudScript, Inc., and inviting Plaintiff to participate in a June 27, 2018 seminar related to services made available by defendant to independent pharmacies such as plaintiff.

12.     The seminars "help owners understand our solution." (Exhibit F)

13.     Discovery may reveal the transmission of additional faxes as well.

14.     Defendant KloudScript, Inc., is responsible for sending or causing the sending of the fax.

15.     Defendant KloudScript, Inc., as the entity whose products or services were advertised  in the fax, derived economic benefit from the sending of the fax.

16.     Defendant KloudScript, Inc., either negligently or wilfully violated the rights of plaintiff and other recipients in sending the faxes.

17.     Plaintiff had no prior relationship with defendant and had not authorized the sending of fax advertisements to plaintiff.

18.     On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

19.     The faxes do not contain an "opt out" notice that complies with 47 U.S.C. §227.

20.     On information and belief, defendant have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

21.     There is no reasonable means for plaintiff or other recipients of defendant's

3

unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and

ready to receive the urgent communications authorized by their owners.

## COUNT I – TCPA

22.     Plaintiff incorporates ¶¶ 1-21.

23.     The TCPA makes unlawful the "use of any telephone facsimile machine,

computer or other device to send an unsolicited advertisement to a telephone facsimile machine

..." 47 U.S.C. §227(b)(1)(C).

24.     The TCPA, 47 U.S.C. §227(b)(3), provides:

> **Private right of action.**
>
> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> > **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
> >
> > **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
> >
> > **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

25.     Plaintiff and each class member suffered damages as a result of receipt of the

unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore,

plaintiff's statutory right of privacy was invaded.

26.     Plaintiff and each class member is entitled to statutory damages.

4

27.     Defendant violated the TCPA even if its actions were only negligent.

28.     Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

29.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendant KloudScript, Inc., promoting its goods or services for sale (d) where defendant does not have evidence of consent or an established business relationship prior to the sending of the faxes.

30.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

31.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

        a.     Whether defendant engaged in a pattern of sending unsolicited fax advertisements;

        b.     The manner in which defendant compiled or obtained its list of fax numbers;

        c.     Whether defendant thereby violated the TCPA;

32.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

33.     Plaintiff's claims are typical of the claims of the class members.  All are based on

5

the same factual and legal theories.

34.     A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

35.     Numerous courts have certified class actions under the TCPA. *Holtzman v. Turza,* No. 08 C 2014, 2009 WL 3334909 (N.D.Ill. Oct. 14, 2009), *aff'd in part, rev'd in part, vacated in part,* 728 F.3d 682 (7th Cir. 2013); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.* 2015 IL 118644, 48 N.E.3d 1060; *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 544 (6th Cir. 2014); *In re Sandusky Wellness Center, LLC*, 570 Fed.Appx. 437, 437 (6th Cir. 2014); *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016); *Sadowski v. Med1 Online, LLC,* No. 07 C 2973, 2008 WL 2224892 (N.D.Ill. May 27, 2008); *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Laboratory, Inc.,* No. 10 C 1315, 2010 WL 4074379 (N.D.Ill. Oct. 12, 2010); *Hinman v. M&M Rental Center, Inc.,* 545 F.Supp.2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters, LLC,* No. 08 C 3276, 2010 U.S.Dist. LEXIS 72902 (N.D.Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communications, Inc.,* No. 08-cv-4521, 2010 WL 744262 (N.D.Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La.App. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.,* 992 So.2d 510 (La.App. 2008); *Lampkin v. GGH, Inc.,* 146 P.3d 847 (Ok.App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz.

94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young,* 792 N.E.2d 547 (Ind.App. 2003);

*Critchfield Physical Therapy v. Taranto Group, Inc.,* 293 Kan. 285, 263 P.3d 767 (2011); *Karen S.*

*Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577 (Mo.App. 2010); *Lindsay Transmission, LLC v.*

*Office Depot, Inc.,* No. 4:12-CV-221 (CEJ), 2013 WL 275568 (E.D.Mo. Feb. 24, 2013).

36.     Management of this class action is likely to present significantly fewer difficulties

that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and

the class and against defendant for:

      a.     Actual damages;

      b.     Statutory damages;

      c.     An injunction against the further transmission of unsolicited fax advertising;

      d.     Costs of suit;

      e.     Such other or further relief as the Court deems just and proper.

## COUNT II – ILLINOIS CONSUMER FRAUD ACT

37.     Plaintiff incorporates ¶¶ 1-21.

38.     Defendant engaged in unfair acts and practices, in violation of ICFA § 2, 815

ILCS 505/2, by sending unsolicited fax advertising to plaintiff and others.

39.     Unsolicited fax advertising is contrary to the TCPA and also Illinois law.  720

ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois

residents.

40.     Defendant engaged in an unfair practice and an unfair method of competition by

engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to

7

recipients of their advertising.

41.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

42.     Defendant engaged in such conduct in the course of trade and commerce.

43.     Defendant's conduct caused recipients of their advertising to bear the cost thereof. This gave defendant an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail.  For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting.  The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink.  "Receiving a junk fax is like  getting junk mail with the postage due".   Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

44.     Defendant's shifting of advertising costs to plaintiff and the class members in this manner makes such practice unfair.  In addition, defendant's conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

45.     Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

46.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, (c) were sent faxes by or on behalf of defendant KloudScript, Inc., promoting its goods or services for sale  (d) where defendant does not have evidence of consent or an established business relationship prior to the sending of the faxes.

8

47.     The class is so numerous that joinder of all members is impractical.  Plaintiff alleges on information and belief that there are more than 40 members of the class.

48.     There are questions of law and fact common to the class that predominate over any questions affecting only individual class members.  The predominant common questions include:

>     a.     Whether defendant engaged in a pattern of sending unsolicited fax advertisements;
>
>     b.     Whether defendant thereby engaged in unfair acts and practices, in violation of the ICFA.

49.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

50.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.

51.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

52.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and

the class and against defendant for:

      a.      Appropriate damages;

      b.      An injunction against the further transmission of unsolicited fax advertising;

      c.      Attorney's fees, litigation expenses and costs of suit;

      d.      Such other or further relief as the Court deems just and proper.

## COUNT III – CONVERSION

53.      Plaintiff incorporates ¶¶ 1-21.

54.      By sending plaintiff and the class members unsolicited faxes, defendant converted to its own use ink or toner and paper belonging to plaintiff and the class members.

55.      Immediately prior to the sending of the unsolicited faxes, plaintiff and the class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

56.      By sending the unsolicited faxes, defendant appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable.  Such appropriation was wrongful and without authorization.

57.      Defendant knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

58.      Plaintiff and the class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose.   Plaintiff and each class member thereby suffered damages as a result of receipt of the unsolicited faxes.

59.      Defendant should be enjoined from committing similar violations in the future.

10

## CLASS ALLEGATIONS

60.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of

a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five

years prior to the filing of this action, (c) were sent faxes by or on behalf of defendant

KloudScript, Inc., promoting its goods or services for sale (d) where defendant does not have

evidence of consent or an established business relationship prior to the sending of the faxes.

61.     The class is so numerous that joinder of all members is impractical.  Plaintiff

alleges on information and belief that there are more than 40 members of the class.

62.     There are questions of law and fact common to the class that predominate over

any questions affecting only individual class members.  The predominant common questions

include:

        a.      Whether defendant engaged in a pattern of sending unsolicited fax

           advertisements;

        b.      Whether defendant thereby converted the property of plaintiff.

63.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has

retained counsel experienced in handling class actions and claims involving unlawful business

practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not

to vigorously pursue this action.

64.     Plaintiff's claims are typical of the claims of the class members.  All are based on

the same factual and legal theories.

65.     A class action is the superior method for the fair and efficient adjudication of this

controversy.  The interest of class members in individually controlling the prosecution of

11

separate claims against defendant is small because it is not economically feasible to bring individual actions.

66.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

      a.     Appropriate damages;

      b.     An injunction against the further transmission of unsolicited fax advertising;

      c.     Costs of suit;

      d.     Such other or further relief as the Court deems just and proper.

## COUNT IV – TRESPASS TO CHATTELS

67.     Plaintiff incorporates ¶¶ 1-21.

68.     Plaintiff and the class members were entitled to possession of the equipment they used to receive faxes.

69.     Defendant's sending plaintiff and the class members unsolicited faxes interfered with their use of the receiving equipment and constitutes a trespass to such equipment. *Chair King v. Houston Cellular*, 95cv1066, 1995 WL 1693093 at *2 (S.D. Tex. Nov. 7, 1995) (denying a motion to dismiss with respect to plaintiff's trespass to chattels claim for unsolicited faxes), vacated on jurisdictional grounds 131 F.3d 507 (5th Cir. 1997).

70.     Defendant acted either intentionally or negligently in engaging in such conduct.

71.     Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes.

12

72.     Defendant should be enjoined from continuing trespasses.

**CLASS ALLEGATIONS**

73.     Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of

a class, consisting of (a) all persons with Illinois fax numbers (b) who, on or after a date five

years prior to the filing of this action,  (c) were sent faxes by or on behalf of defendant

KloudScript, Inc., promoting its goods or services for sale (d)  where defendant does not have

evidence of consent or an established business relationship prior to the sending of the faxes.

74.     The class is so numerous that joinder of all members is impractical.  Plaintiff

alleges on information and belief that there are more than 40 members of the class.

75.     There are questions of law and fact common to the class that predominate over

any questions affecting only individual class members.  The predominant common questions

include:

      a.      Whether defendant engaged in a pattern of sending unsolicited fax
           advertisements;

      b.      Whether defendant thereby committed a trespass to chattels.

76.     Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has

retained counsel experienced in handling class actions and claims involving unlawful business

practices.  Neither plaintiff nor plaintiff's counsel have any interests which might cause them not

to vigorously pursue this action.

77.     Plaintiff's claims are typical of the claims of the class members.  All are based on

 the same factual and legal theories.

78.     A class action is the superior method for the fair and efficient adjudication of this

controversy. The interest of class members in individually controlling the prosecution of

separate claims against defendant is small because it is not economically feasible to bring

individual actions.

79. Management of this class action is likely to present significantly fewer difficulties

that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and

the class and against defendant for:

        a.      Appropriate damages;

        b.      An injunction against the further transmission of unsolicited fax advertising;

        c.      Costs of suit;

        d.      Such other or further relief as the Court deems just and proper.

/s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


<u>/s/ Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
       & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**<u>EXHIBIT A</u>**




# Interested in securing your Pharmacy's future with specialty?

**Find out how to join the KloudScript Specialty Performance Alliance to remain competitive!**

## DATE

### June 2, 2018

**08:30 AM - 12:00 PM**

## KloudScript, Inc.

17W755 Butterfield Road

Suite C-120

Oakbrook Terrace, IL 60181

The KloudScript Specialty Performance Alliance brings like-minded, community pharmacies together to provide specialty medications to patients locally.

**Schedule:**

08:30 AM - 09:00 AM - Registration

09:00 AM - 10:00 AM - KloudScript Specialty Performance Alliance: Turning Specialty Obstacles into Opportunities

10:15 AM - 11:30 AM - KloudScript Specialty Performance Alliance: Participation Strategy and Standards

11:30 AM - 12:00 PM - Q&A

**Register at: www.KloudScript.com/KSPA/RSVP**

Confidential Notice: This information may have been disclosed to you from records whose confidentiality is protected by federal and state laws. Federal regulation and state law prohibit any further disclosure without the specific written authorization of the person to whom it pertains or as otherwise permitted by such regulation for the release of med... If the reader of this information is not the intended recipient, you are hereby notified that any use, disclosure, dissemination, distribution, or reproduction of this information ... us that you have received this information in error, please immediately notify us by telephone and return the original received facsimile to us via United States Postal Service. Thank you.

**EXHIBIT B**

 

# Interested in securing your Pharmacy's future with specialty?

**Find out how to join the KloudScript Specialty Performance Alliance to remain competitive!**

## DATE

**June 2, 2018**

**08:30 AM - 12:00 PM**

## KloudScript, Inc.

17W755 Butterfield Road
Suite 102
Oakbrook Terrace, IL 60181

The KloudScript Specialty Performance Alliance brings like-minded, community pharmacies together to provide specialty medications to patients locally.

**Schedule:**
08:30 AM - 09:00 AM - Registration
09:00 AM - 10:00 AM - KloudScript Specialty Performance Alliance:
Turning Specialty Obstacles into Opportunities
10:15 AM - 11:30 AM - KloudScript Specialty Performance Alliance:
Participation Strategy and Standards
11:30 AM - 12:00 PM - Q&A

**Register at: www.KloudScript.com/KSPA/RSVP**

**<u>EXHIBIT C</u>**

 

# Interested in securing your
# Pharmacy's future with specialty?

**Find out how to join the KloudScript Specialty Performance Alliance to remain competitive!**

## DATE

**June 27, 2018**

**07:00 PM - 09:00 PM**

### KloudScript, Inc.

17W755 Butterfield Road
Suite 102
Oakbrook Terrace, IL 60181

The KloudScript Specialty Performance Alliance brings like-minded, community pharmacies together to provide specialty medications to patients locally.

**Schedule:**

| | | |
|---|---|---|
| 06:30 PM - 07:00 PM | - | Registration |
| 07:00 PM - 07:45 PM | - | KloudScript Specialty Performance Alliance: Turning Specialty Obstacles into Opportunities |
| 07:45 PM - 08:30 PM | - | KloudScript Specialty Performance Alliance: Participation Strategy and Standards |
| 08:30 PM - 09:00 PM | - | Q&A |

**Register at: www.KloudScript.com/KSPA/RSVP**

**EXHIBIT D**

 

# Interested in securing your
# Pharmacy's future with specialty?

**Find out how to join the KloudScript Specialty Performance Alliance to remain competitive!**

## DATE

### June 27, 2018

**07:00 PM - 09:00 PM**

---

## KloudScript, Inc.

17W755 Butterfield Road
Suite 102
Oakbrook Terrace, IL 60181

The KloudScript Specialty Performance Alliance brings like-minded, community pharmacies together to provide specialty medications to patients locally.

**Schedule:**

06:30 PM - 07:00 PM  - Registration

07:00 PM - 07:45 PM  - KloudScript Specialty Performance Alliance:
Turning Specialty Obstacles into Opportunities

07:45 PM - 08:30 PM  - KloudScript Specialty Performance Alliance:
Participation Strategy and Standards

08:30 PM - 09:00 PM  - Q&A

**Register at: www.KloudScript.com/KSPA/RSVP**

**EXHIBIT E**

 

# Interested in securing your
# Pharmacy's future with specialty?

**Find out how to join the KloudScript Specialty Performance Alliance to remain competitive!**

## DATE

### June 27, 2018

**07:00 PM - 09:00 PM**

## KloudScript, Inc.

17W755 Butterfield Road
Suite 102
Oakbrook Terrace, IL 60181

The KloudScript Specialty Performance Alliance brings like-minded, community pharmacies together to provide specialty medications to patients locally.

**Schedule:**

06:30 PM - 07:00 PM  -  Registration

07:00 PM - 07:45 PM  -  KloudScript Specialty Performance Alliance:
Turning Specialty Obstacles into Opportunities

07:45 PM - 08:30 PM  -  KloudScript Specialty Performance Alliance:
Participation Strategy and Standards

08:30 PM - 09:00 PM  -  Q&A

**Register at: www.KloudScript.com/KSPA/RSVP**

**EXHIBIT F**

# What is KloudScript, Inc.?

Rinku A. Patel, Pharm.D., R.Ph., CEO and founder of KloudScript, Inc., breaks down what KloudScript does and how pharmacies looking to get into specialty can benefit from its services.

## TELL US ABOUT KLOUDSCRIPT. WHAT IS IT? WHAT DOES IT DO?

Independent community pharmacies need a staged approach to provide specialty care in a retail setting. KloudScript, in partnership with the independent pharmacy, provides the exact same services to industry stakeholders as specialty pharmacies. KloudScript provides strategic and administrative functions, and the pharmacy is responsible for what it does best—providing patient care and medications.

## WHAT ARE SOME OF KLOUDSCRIPT'S BEST FEATURES?

As part of the development and launch of KloudScript, I have participated in many focus groups and market research activities with various industry experts and independent pharmacy owners throughout the country. The one phrase that keeps resonating when I solicit feedback from owners is that it's a "no-brainer" to participate in the KloudScript alliance to enable specialty care at retail. The best feature of KloudScript is that it eliminates the obstacle of intense capital requirements and knowledge deficit. Our management team has solid experience and our infrastructure, including a technology solution, provides economies of scale and scope for our independent pharmacy partners to be able to enter the specialty market. Having the quality and consistency of care experience, with a broad geographic footprint to address the needs of payers and pharma, is also a unique and substantial attribute.

## HOW DOES KLOUDSCRIPT HELP PHARMACIES CREATE A SPECIALTY PROGRAM?

KloudScript provides the framework to set up a specialty care program. There are some implementation requirements on the part of the pharmacy, such as staff members' time for training and execution of the day-to-day operations. However, with the training and support provided by KloudScript, independent pharmacies can implement a specialty solution within a reasonable timeframe, given staff resources are focused and dedicated to the specialty care program and to the implementation process.

## HOW WOULD A PHARMACY BENEFIT FROM USING KLOUDSCRIPT FOR ITS SPECIALTY PROGRAM?

In order to be successful, a pharmacy will need to commit to quality and performance and live it on a day-to-day basis. KloudScript provides the entire framework and a patient care management system to execute the specialty care program. However, our partnership with the independents is strictly based on providing service at a level and quality that is above the expectations of industry stakeholders including patients, prescribers, payers and pharma.

## WHY IS IT IMPORTANT FOR PHARMACIES TO PARTNER WITH A COMPANY LIKE KLOUDSCRIPT INSTEAD OF TRYING TO DO SPECIALTY ON THEIR OWN?

A successful specialty care solution requires integration of strategic and operational components. Using software, consulting advice, or outsourcing your back-office functions can get you to a certain level, but it will not give you a long-term viable solution of sustainable growth because of the scale required to attract the attention of pharma and payers.

Owners have to ask themselves if they want a solution that just takes care of "accidental specialty" that ends up in their pharmacies, or if they want a solution that will not only help them retain the "accidental specialty" scripts, but more importantly build and grow the specialty business over a period of time. KloudScript's solution is a turnkey integrated approach. As we grow, more and more industry stakeholders will benefit from our solution because it's aligned with the needs of the patients and our pharmacy partners, as well the prescriber, pharma and payer community.

## HOW CAN A PHARMACY FIND OUT MORE ABOUT KLOUDSCRIPT?

Please send a request to *sales@kloudscript.net*. We do webinars occasionally to help owners understand our solution. They can request participation by emailing us.